IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

**STATE OF TENNESSEE v. RICHARD PRICE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-06939     Lee V. Coffee, Judge**

_____

**No. W2008-02590-CCA-R3-CD  - Filed September 1, 2009**

_____

The defendant, Richard Price, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony, and sentenced to twenty years as a Range II, multiple offender.  On appeal, he argues that the trial court erred in declining to grant a mistrial after a witness testified that he attempted to speak to the defendant and challenges the sufficiency of the evidence and the sentence imposed by the trial court.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Robert Wilson Jones, District Public Defender; Barry W. Kuhn (on appeal) and Michael J. Johnson (at trial), Assistant Public Defenders, for the appellant, Richard Price.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; and D. Gregory Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the robbery of a Wendy's restaurant on South Third Street in Memphis on the evening of March 11, 2007, for which the defendant was indicted on one count of aggravated robbery.

**State's Proof**

At trial, Antonio Wright testified that he was working as the assistant manager of the Wendy's restaurant on South Third Street the evening of March 11, 2007.  Around 9:00 p.m., Wright

took over as cashier at one of the drive-through windows so the cashier could take a break. He manned the first window where he was responsible for taking orders and receiving payment.

Wright recalled that he took an order for chicken nuggets and instructed the person to drive to the first window. A burgundy, four-door sedan with a white hood pulled around "at an angle in which [the driver] would have to get out of the car almost, you know, not directly beside the window." There were two black men in the car, and Wright could see their faces and "make out what they looked like." Wright estimated that he was approximately eight feet from the driver, identified as the defendant, at that point.

Wright gave the defendant his total of $1.08, and the defendant "responded by saying did you say five or did you say one[?]" Wright repeated the total, and the defendant started to reach in his pocket as if he were reaching for his money. However, at that point, Wright noticed that the passenger had "a half mask covering . . . the bottom portion of his face." While Wright's attention was on the passenger, the defendant got out of the car with a pistol, approached Wright, and demanded "all the money." Wright was focused on the defendant's face and the pistol, a silver revolver, as the defendant approached him.

Wright recalled that the defendant's demeanor was "[k]ind of nonchalant but . . . kind of angry like[.]" The defendant's tone of voice made Wright think that he was angry. Wright estimated that the defendant was a little taller than himself. He noted that the defendant had a multi-colored bandana covering his hair but said that he could see the defendant's entire face and noted that he "had a medium goatee, you know, mustache with a goatee."

Wright testified that he removed the register from the drawer and set it on the window ledge in response to the defendant's demand for money. Wright removed "between $120 and $130" from the drawer and gave it to the defendant. It took him about four or five seconds to get the money out of the drawer. The defendant was close enough that Wright could have touched the gun. The incident lasted "a little bit over a minute," and Wright never looked away from the defendant's face the entire time. Wright acknowledged that he did not pay attention to the passenger during the incident.

Wright testified that after the defendant took the money, he backed away, got into the car, and drove off. After the defendant drove away, the police were notified. Several days later, Wright identified the defendant "[a]lmost instantly" from a photographic lineup. He also identified the defendant out of a group of four or five individuals at a preliminary hearing approximately a month after the incident.

On cross-examination, Wright acknowledged that in his statement to police shortly after the incident, he said that the robber was driving a burgundy four-door car with a white top instead of a white hood. He also acknowledged that he called it a "top" at the preliminary hearing as well. However, he explained that he was initially unsure about whether it was a hood or top, "but once [he] kind of settled down [he] . . . kind of knew . . . that it was the hood." Wright agreed that there

is a difference between a hood and a top but elaborated, "I'm not saying anything different. I mean, as in the hood or, you know, which was, I was, you know, still saying that's being the hood of the car."

Sergeant Timmie Wilson of the Memphis Police Department testified that he investigated the robbery and interviewed Wright. He also talked to the defendant's girlfriend, Elizabeth Buntyn, and attempted to talk to the defendant. Sergeant Wilson sought out Buntyn because he received a memo from another officer that Buntyn had been issued a ticket while driving a vehicle matching the description of the vehicle used in the robbery. When Buntyn received the citation, the defendant was a passenger in the car, and he was also the owner of the car. Sergeant Wilson created a photographic array of six photographs from which Wright identified the defendant as the robber.

Elizabeth Buntyn testified that she received a traffic citation for expired tags on March 17, 2007. She was driving the defendant's maroon 1994 Lexus with a white hood when she received the citation.

### Defendant's Proof

Dr. Jeffrey Neuschatz, an Associate Professor of Psychology at the University of Alabama Huntsville, was accepted by the court as an expert in the area of eyewitness identification. Dr. Neuschatz testified that a person's memory of an event might be impaired if the person was distracted or stressed as when "looking at a weapon." He noted that the presence of a weapon increases the amount of stress and draws the attention of the observer. He stated that studies have also indicated that the accuracy of eyewitness identification decreases when the culprit's hairline is covered.

Dr. Neuschatz observed that the photographic lineup in this case appeared to conform to the Department of Justice's guidelines for conducting a proper and unbiased lineup with the exception that the officer who conducted the lineup knew the position of the suspect. He explained that the danger is that the officer conducting the lineup may unintentionally give clues as to which one is the suspect. Dr. Neuschatz reviewed the photographic lineup in this case, and in his opinion, it "look[ed] pretty good," except one person looked younger than the others. On cross-examination, Dr. Neuschatz acknowledged that the bulk of his experiments involved video observations, and he had never conducted an experiment in which a person was asked to make an identification after a face-to-face encounter.

### ANALYSIS

### I. Mistrial

The defendant argues that the trial court erred in declining to grant a mistrial after one of the State's witnesses testified that he "attempted to talk to the defendant." The defendant asserts that such testimony was improper proof of his silence in violation of his right to remain silent.

During Sergeant Wilson's testimony on direct examination, the prosecutor asked if he interviewed anyone other than Antonio Wright in the course of his investigation. Sergeant Wilson responded, "I talked to Antonio Wright. I attempted to talk to the defendant and I talked to the defendant's girlfriend." Defense counsel immediately asked for a bench conference and requested a mistrial. The court denied the request and offered to give a curative instruction. However, defense counsel declined the court's offer, arguing that "bringing attention to it would make it worse."

Whether to declare a mistrial lies within the sound discretion of the trial court, and its decision in this regard will not be overturned on appeal absent a showing of an abuse of discretion. State v. Land, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). A mistrial should be declared in a criminal case only when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial is not declared. See id. (citing State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994)); State v. Jones, 15 S.W.3d 880, 893 (Tenn. Crim. App. 1999) (citing Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977)). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (quoting Arnold, 563 S.W.2d at 794). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. Land, 34 S.W.3d at 527 (citing State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)).

In State v. Paul Hayes, No. W2001-02637-CCA-R3-CD, 2002 WL 31746693 (Tenn. Crim. App. Dec. 6, 2002), perm. to appeal denied (Tenn. May 27, 2003), we explained the factors often considered in deciding whether a mistrial should be declared following improper testimony by a witness:

> When determining whether a mistrial is necessary after a witness had injected improper testimony, this court has often considered: (1) whether the improper testimony resulted from questioning by the State, rather than having been a gratuitous declaration; (2) the relative strength or weakness of the State's proof; and (3) whether the trial court promptly gave a curative instruction.

Id. at *4 (citing State v. Demetrius Holmes, No. E2000-02263-CCA-R3-CD, 2001 WL 1538517 (Tenn. Crim. App. Nov. 30, 2001)).

In denying the defendant's motion for a mistrial, the trial court found that Sergeant Wilson's statement was gratuitous and not directly responsive to the prosecutor's question. The court noted that it was not clear whether the defendant "was in custody or out of custody, whether [it] was a pre-arrest silence or a post-arrest silence" when Sergeant Wilson attempted to talk to him. The court observed that the jury could easily think that the attempted conversation was due to Sergeant Wilson's inability to locate the defendant. The trial court offered to give the jury a curative instruction, but defense counsel declined for fear that doing so would call more attention to the statement. The court concluded that there was no manifest necessity for a mistrial and that the statement would not affect the jury's ability to reach a verdict.

The defendant has failed to show that the trial court abused its discretion in declining to grant a mistrial. Sergeant Wilson's response was not directly responsive to the prosecutor's question, the proof presented by the State was relatively strong, and the trial court offered to give a curative instruction which defense counsel declined. Moreover, as noted by the trial court, the record does not show when or why Sergeant Wilson attempted to talk to the defendant, and the attempted conversation could have been due to Sergeant Wilson's inability to locate the defendant. Therefore, Sergeant Wilson's testimony does not even clearly indicate that the defendant declined to speak to the officer and invoked his right to remain silent. The defendant is not entitled to relief.

## II. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence, arguing there was insufficient proof of his identity as the robber. When reviewing a challenge to the sufficiency of the convicting evidence, we note that the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear when accomplished with a deadly weapon or by display of

any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (2006).

In the light most favorable to the State, the evidence shows that Antonio Wright identified the defendant as the person who pulled up to the Wendy's drive-through window, got out of the car holding a silver revolver, demanded money, and left with approximately $120. Wright made the identification from a photographic array within several days of the robbery, at a preliminary hearing, and again at trial. Wright also described that the robber was driving a burgundy four-door sedan with a white top or hood, and the defendant was the owner of a burgundy or maroon four-door Lexus sedan with a white hood. Even though Wright testified that the defendant had a multi-colored bandana covering his hair during the robbery, Wright said that he could see the defendant's entire face and even described that he had a mustache with a goatee. We note that the identity of the defendant as the perpetrator of the offense is a question of fact for the jury. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The identification testimony of the victim is sufficient, alone, to support a conviction. Id. The defendant presented evidence regarding the reliability of the eyewitness identifications, and by its verdict, the jury accredited Wright's identification of the defendant. We conclude that the evidence was sufficient for a rational trier of fact to convict the defendant of aggravated robbery.

### III. Sentencing

The defendant challenges the trial court's imposition of a twenty-year sentence. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the

sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed" and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

At the sentencing hearing, the forty-six-year-old defendant maintained his innocence and said he had straightened out his life since being released from prison seven years earlier. He admitted that he had four prior felony convictions. He stated that he had worked as a forklift operator since the age of eighteen and had a close relationship with his family.

On cross-examination, the defendant testified that he robbed a bank in 1991, and thus committed aggravated robbery, because he needed $10,000 to pay for his grandmother's house. He said he did not use a weapon, but his co-defendants did and he "was just the get-away driver." He acknowledged that he also had a conviction for voluntary manslaughter and two convictions for receiving stolen property. The defendant elaborated that the voluntary manslaughter conviction was the result of him killing someone who robbed him and "Tennessee didn't have self-defense laws." The defendant admitted that he also had a juvenile record and was removed from his mother's home at one point because he "was constantly getting into trouble at school."

Decrecia Price, the defendant's sister, testified that she had helped the defendant try to find a job. She acknowledged that she and the defendant fought as children, but she did not recall juvenile court getting involved.

In sentencing the defendant, the trial court noted that the defendant was a Range II offender "by virtue of the voluntary manslaughter and aggravated robbery convictions" but that he also had two Class E felony convictions, several other misdemeanor convictions, and juvenile delinquent adjudications. The court observed that the defendant's mother was "absolutely incapable of controlling [the defendant]" as a child, and the juvenile court system "failed miserably" at trying to "straighten[] [him] out[.]" Therefore, the court found that the defendant had a previous history of criminal convictions or criminal behavior in addition to that necessary to establish his range, see Tenn. Code Ann. § 40-35-114(1), and gave "great weight" to that factor. The court noted mitigating factors of the defendant having a troubled childhood and a supportive family but did not give those factors "great weight." The court concluded that the enhancement factor was "extremely significant" and sentenced the defendant to the maximum of twenty years.

The defendant argues that the trial court inappropriately used his prior voluntary manslaughter and aggravated robbery convictions to both establish his range and enhance his

sentence. At one point during its findings, the trial court referred to the voluntary manslaughter and aggravated robbery convictions as being "extremely aggravating." However, the trial court previously noted that the defendant's range was established from his voluntary manslaughter and aggravated robbery convictions but that he had two other felony convictions, several misdemeanor convictions, and juvenile adjudications. From the sum of the trial court's findings, it is readily apparent that the court found the defendant's other convictions and criminal behavior more than sufficient for application of the enhancement factor.

The defendant's presentence report shows felony convictions for voluntary manslaughter and aggravated robbery, again, which established his range, and two convictions of receiving stolen property. He has misdemeanor convictions for disorderly conduct, assault and battery, disturbing the peace, malicious mischief, simple assault, and criminal trespass, as well as a lengthy history of juvenile complaints. The record shows that the trial court arrived at a sentence consistent with the purposes and principles of sentencing, and its findings are fully supported by the record.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE